IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MUHAMMAD KHALID KAHN,** | : | |
| Petitioner | : | |
| | : | No. 1:23-cv-00122 |
| v. | : | |
| | : | (Judge Kane) |
| **WARDEN OF FCI-ALLENWOOD LOW,** | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Pending before the Court is pro se Petitioner Muhammad Khalid Kahn ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). (Doc. No. 1.) Petitioner, a prisoner in the custody of the Federal Bureau of Prisons ("BOP") asserts that, while he was incarcerated at Federal Correctional Institution Allenwood Low in White Deer, Pennsylvania ("FCI Allenwood Low"), he was denied due process during a disciplinary proceeding, which resulted in the loss of, inter alia, good-conduct time. (Id.) The Court finds, however, that it cannot resolve the petition based upon the record that is presently before the Court. As a result, the Court will direct the parties to supplement the record in accordance with the discussion below.

I.      BACKGROUND

On September 7, 2021, at approximately 6:30 p.m., correctional officer M. Stauffer "was reviewing required monitoring inmate phone translations" at FCI Allenwood Low. (Doc. No. 8-1 at 4, 10.) M. Stauffer reviewed a phone call translation for Petitioner, which was placed on August 28, 2021, at 2:43 p.m. from phone station 1796-ALF-GB to an outside contact. (Id. (explaining that this phone number was listed on Petitioner's contact list as an outside contact).) This phone call was translated by an approved BOP contractor. (Id.) The translator is alleged to

have noted that, during this phone call, there was a three (3)-way call placed between the minutes of 5:57-15:20. (Id.) More specifically, the translator is alleged to have noted the following.

At the beginning of the call, Petitioner asked the outside contact to place a call to someone else. (Id.) In particular, Petitioner states, "All right. Dial his number now." (Id.) The outside contact agrees to make the call. (Id.) Approximately six (6) minutes into the call, the outside contact states, "No, no. I haven't seen him. I don't know about him. [Redacted Unidentified male] is calling. Talk to him." (Id.) This is when the three (3)-way call begins and continues for the remainder of the fifteen (15)-minute call. (Id.)

According to the documentation submitted by Respondent, the BOP prohibits three (3)-way phone calls because they circumvent phone monitoring procedures. (Id.) As a result, on September 7, 2021, the same date that M. Stauffer reviewed Petitioner's phone call translation, Incident Report 3544582 was delivered to Petitioner by R. Wolfe, the investigating lieutenant. (Id. at 10.) Petitioner was charged with Prohibited Act Code 297—Phone Abuse-Disrupt Monitoring.[1] (Id.) As noted in the incident report, Petitioner was advised of his rights concerning the disciplinary process, and Petitioner stated that he understood those rights, as they were read to him. (Id. at 12.) Petitioner had no comment and did not request any further investigation or to call any witnesses during the questioning. (Id.) The incident report was then referred to a Discipline Hearing Officer ("DHO") for a hearing. (Id. at 11 (explaining that "based on the severity of the incident report" an "[a]utomatic DHO referral" was made).)

The following day, on September 8, 2021, Albright, a staff member, advised Petitioner of his rights "before the DHO[.]" (Id. at 3.) In response, Petitioner requested that a staff

---

[1] The language underlying Prohibited Act Code 297 has not been submitted into the record by either party, and no arguments have been made concerning such language.

representative assist him during his disciplinary hearing. (Id.) E. Shrimp, the Unit Secretary, was assigned as Petitioner's staff representative, and she met with Petitioner in advance of the hearing to discuss his case. (Id.) It is noted in the DHO's report that all documents concerning Petitioner's case were disclosed to E. Shrimp and, further, that Petitioner made no specific requests of E. Shrimp with regard to her appearance at his hearing. (Id.)

Petitioner appeared before the DHO on September 23, 2021, denying the disciplinary charge brought against him. (Id.) The DHO advised Petitioner of his rights before the hearing began, and Petitioner indicated that he understood those rights. (Id.) In addition, Petitioner chose to provide the following statement: "My mother and son have no phone. I think the translation is incorrect. I just asked if he was there and to call him to the phone. No, I never said to dial the phone. I follow the rules. SIS told me not to use the texting app and I shut it down." (Id.)

According to the DHO's report, Petitioner neither asserted any procedural issues, nor presented any witnesses or documentary evidence for consideration during the hearing. (Id.) Also according to the DHO's report, it appears that the DHO reviewed the following pieces of documentary evidence: the incident report charging Petitioner, and the "[c]all interpretation" by the BOP contactor.[2] (Id. at 4 (referencing these specific documents under the "Documentary Evidence" section in the DHO's report).) Petitioner asserts, however, that the DHO did not allow him access to the phone call transcript or the recorded conversation and, additionally, that the DHO was not "presented with" this evidence before rendering his decision on the charged misconduct. (Doc. No. 2 at 2–3.)

---

[2] For ease of reference, the Court will refer to this "[c]all interpretation" as the "phone call transcript."

3

Ultimately, however, on September 27, 2021, the DHO found that Petitioner committed Prohibited Act Code 297—Phone Abuse-Disrupt Monitoring. (Id. at 3–5.) The DHO's finding was based upon the written account of the reporting officer and Petitioner's statement. (Id.) In addition, it appears that the DHO's decision was also based upon the phone call transcript. (Id. at 5 (stating that the DHO considered the "evidence documented above" in the report).) However, and as noted above, Petitioner disputes that the DHO actually reviewed this transcript.

As a result, the DHO sanctioned Petitioner with disallowance of twenty-seven (27) days' good-conduct time and loss of email privileges for three (3) months. (Id. (explaining the reason for these sanctions as follows: Petitioner's "behavior of requesting and participating in a three[-]way telephone call circumvents staff monitoring of his community contacts" and, thus, "disallowance of good conduct time is sanctioned to punish the inmate for his misconduct, while loss of email privileges may aid in deterring him and possibly other inmates from negatively acting out while incarcerated").) As indicated in the DHO's report, Petitioner was advised of these findings, the evidence relied upon, the action taken, and the reasons for the action taken. (Id.) Petitioner was also advised of his right to appeal the DHO's decision. (Id.) In addition, Petitioner was provided with a copy of the DHO's report. (Id.)

Petitioner alleges that, following the DHO's decision, he exhausted "all administrative remedies available to him[.]" (Doc. No. 2 at 2.) Petitioner also alleges that he has provided copies of "[a]ll BP-11s and responses" to the Court. (Id.) The Court notes, however, that those copies have not been filed on the docket.

Following his alleged exhaustion efforts, Petitioner filed the instant Section 2241 petition in this Court on January 23, 2023. (Doc. No. 1.) After some initial administrative matters, the Court, on March 1, 2023, deemed the petition filed, directed service of the petition on

4

Respondent, who is the Warden at FCI Allenwood Low, and directed Respondent to file a response to the allegations contained in the petition within twenty (20) days. (Doc. No. 6.) On March 21, 2023, Respondent filed a response, arguing that the petition should be denied by the Court because Petitioner was afforded all the due process protections that he is owed under the law. (Doc. No. 8.) As reflected by the Court's docket, Petitioner did not file a reply, and the time period for doing so has passed. Thus, the instant Section 2241 petition is ripe for the Court's resolution.

**II.  DISCUSSION**

In his Section 2241 petition and accompanying memorandum, Petitioner claims that his due process rights were violated in connection with his disciplinary hearing held on September 23, 2021. (Doc. Nos. 1 at 6; 2 at 2–3.) In support, Petitioner asserts that the DHO neither provided him with a copy of the phone call transcript, nor allowed him to listen to the recorded conversation, even though he had requested that the DHO provide him with access to both. (Doc. No. 2 at 1–3.) Petitioner contends that this evidence was central to his defense because it reveals that he did not ask his outside contact to place a three (3)-way call, but instead, simply asked his outside contact if Haji, their older brother and, allegedly, an approved contact, "was there and if so, would [the outside contact] put him on the phone." (Id. at 3–4; id. at 4 (alleging that Haji is on his "approved calling list").) In addition, Petitioner also asserts that, "[i]nstead of reviewing the full evidence, the [DHO] based his finding of guilty solely on the observation of the phone monitor M. Stauffer who claimed that there was a 3-way call by [Petitioner] without any other facts to support such a claim." (Id. at 3.) In other words, Petitioner argues that there was no evidence "whatsoever" concerning the phone call transcript or the recorded conversation that was presented to the DHO before he found Petitioner guilty of the disciplinary charge. (Id.)

5

As for relief, Petitioner requests that the Court order the BOP to expunge his disciplinary record and to restore his twenty-seven (27) days of good-conduct time. (Doc. Nos. 1 at 8; 2 at 4.)

Respondent, however, has opposed Petitioner's request for relief in this matter. (Doc. No. 8.) In support, Respondent argues that Petitioner received all of the due process protections to which he was entitled during his disciplinary proceedings and that the DHO's decision was supported by "some evidence[,]" as required by the applicable legal standard. (Doc. No. 8 at 4–10.) As a result, Respondent contends that the petition it without merit and should be denied by the Court. (Id. at 11.)

Having reviewed the parties' respective arguments, the underlying record in this matter, and relevant authorities, the Court finds that it cannot resolve the petition based upon the record that is presently before the Court. The Court will, therefore, direct the parties to supplement the record in accordance with the discussion below.

The Court treats Petitioner's Section 2241 petition as asserting a due process challenge under the Fifth Amendment to the United States Constitution based upon allegations that the BOP deprived him of good-conduct time, as a disciplinary sanction, without sufficient evidence and without allowing him access to documentary evidence. (Doc. Nos. 1–2.) The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. V. Prisoners have a constitutionally protected liberty interest in good-conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974). However, "while prisoners retain certain basic constitutional rights, including the protections of the [D]ue [P]rocess [C]lause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the

6

demands and realities of the prison environment." See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff, 418 U.S. at 555–56.)

In Wolff, the United States Supreme Court set forth the due process protections that prisoners are entitled to "when prison officials seek to deprive them of good-time credits[.]" See Burns v. PA Dep't of Corr., 642 F.3d 163, 171–72 (3d Cir. 2011). Those protections require: (1) an impartial decision-making body; (2) written notice of the charges, which must be given to the prisoner no less than twenty-four (24) hours before his appearance at the disciplinary hearing so that he can marshal the facts and prepare a defense; (3) the opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals;" and (4) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563–71. Additionally, the United States Supreme Court has explained that, where an illiterate prisoner is involved or where the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence that is necessary for an adequate command of the case, the prisoner "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent [prisoner] designated by the staff." See id. at 570.

Where, as here, a prisoner challenges a disciplinary proceeding that deprived him of good-time credits, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). In other words, "[t]his standard is met if there was some evidence from which the conclusion of the [disciplinary board] could be deduced[.]" See id. (citation and internal quotation marks omitted). Thus, determining

"whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." See id. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." See id. at 455–56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent evidentiary standard as a constitutional requirement." See id. at 456. And, in declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See Wolff, 418 U.S., at 562–563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id. at 556[,] and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

See id.

In applying this governing legal standard here, the Court finds that, with respect to most aspects of his disciplinary proceedings, Petitioner has not argued that he was deprived of the protections afforded by the Due Process Clause. For instance, Petitioner has not challenged that he: appeared before an impartial DHO; received advanced written notice of the charges; had a staff representative assist him in connection with his disciplinary proceeding; had the opportunity to call witnesses; and was provided a copy of the DHO's written statement, which outlined the evidence relied upon, the sanctions rendered, and the reasons for those sanctions. See Wolff, 418 U.S. at 563–71.

What Petitioner appears to be challenging, however, is whether he was afforded the opportunity to access the documentary evidence at his disciplinary hearing and whether the DHO

actually reviewed that documentary evidence. Under United States Supreme Court precedent, "a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities." See Young v. Kann, 926 F.2d 1396, 1400 (3d Cir. 1991). The discretion that is afforded to prison officials in this context is "quite broad[:]"

> We should not be too ready to exercise oversight and put aside the judgment of prison administrators . . . [W]e must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

See Young, 926 F.2d at 1400 (quoting Wolff, 418 U.S. at 566).

As explained by the Third Circuit Court of Appeals, however, this discretion "is not without limits[,]" and the deference owed to prison officials "does not require . . . that a reviewing court defer to the arbitrary denial of an inmate's limited rights[s]." See id. (alterations in original) (citation and internal quotation marks omitted); Burns v. PA Dep't of Corr., 642 F.3d 163, 173 (3d Cir. 2011) (explaining that "[a]lthough prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits'" (quoting Kann, 926 F.2d at 1400)). As a result, a prisoner "should be allowed to . . . present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." See Wolff, 418 U.S. at 566.

The Court observes that a number of federal courts have held that this limited right to present documentary evidence necessarily extends to a prisoner's limited right to access evidence that is central to his defense, particularly evidence that is potentially exculpatory, provided that

9

disclosure of such evidence would not unduly threaten institutional safety or security. See, e.g., Kann, 926 F.2d at 1400–02 (holding that, absent valid security reasons, a prison official's refusal to produce documentary evidence that he relied on in finding a prisoner guilty of disciplinary charges violated the prisoner's due process rights to "present documentary evidence" and "marshal the facts in his defense" (citation and internal quotation marks omitted)); Melnik v. Dzurenda, 14 F.4th 981, 985 (9th Cir. 2021) (explaining as follows: "[i]f a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation[;] [w]ith no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing"); Lennear v. Wilson, 937 F.3d 257, 269 (4th Cir. 2019) (stating that "an inmate's due process rights related to . . . evidence has at least two dimensions: (A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence"); Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992) (reiterating that "an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional concerns" (citations omitted)); Smith v. Massachusetts Dep't of Correction, 936 F.2d 1390, 1401 (1st Cir. 1991) (observing that, "[i]f an inmate has a circumscribed right to present documentary evidence, logic dictates that he must also have some possible means for obtaining it"); Meis v. Gunter, 906 F.2d 364, 367 (8th Cir. 1990) (stating that "[inmates] have a right to reasonable access to information necessary to put on a defense, including prison documents . . . ").

Here, Petitioner contends that the evidence he sought was central to his defense because it reveals that he did not ask his outside contact to place a three (3)-way call, but instead, simply asked his outside contact if Haji, their older brother and, allegedly, an approved contact, "was

10

there and if so, would [the outside contact] put [Haji] on the phone." (Doc. No. 2 at 3–4; id. at 4 (contending that Haji is on his "approved calling list").) Thus, Petitioner seems to suggest, without using the specific phrasing, that this documentary evidence, to which he was denied access by the DHO, is exculpatory. (Id.)

Petitioner's argument, however, does not end there. Petitioner also contends that, "[i]nstead of reviewing the full evidence, the [DHO] based his finding of guilty solely on the observation of the phone monitor M. Stauffer who claimed that there was a 3-way call by [Petitioner] without any other facts to support such a claim." (Id. at 3.) In other words, Petitioner contends that there was no evidence "whatsoever" concerning the phone call transcript or the recorded conversation that was presented to the DHO before he found Petitioner guilty of the disciplinary charge. (Id.)

Accordingly, if Petitioner's factual allegations are true—that is, that he requested and was denied, without any explanation on the record by the DHO, access to review potentially exculpatory evidence (i.e., the phone call transcript or the recorded conversation) that was used to find him guilty of the underlying misconduct charge—then the Court would be inclined to find that his allegations implicate the Due Process Clause. This is especially true where, as here, Petitioner contends that the DHO did not even review this potentially exculpatory evidence. Petitioner's limited right to access this evidence would, of course, be restricted where disclosure thereof would unduly threaten institutional safety or security. Ultimately, however, the Court finds that it is unable to make such findings here.

Respondent has not addressed Petitioner's specific allegations that he made this request before the DHO, and there is no evidence in the underlying record that Petitioner made this request. Taking this a step further, assuming arguendo that Petitioner made this request before

the DHO, Respondent has not addressed why the DHO denied this request, and again, there is no evidence in the underlying record for the Court to ascertain the basis of the DHO's alleged denial. In addition, Respondent does not address whether or not this evidence Petitioner requested access to is exculpatory or otherwise critical to the presentation of his defense.[3] And, so, because Respondent has not filed the pertinent evidence with the Court—that is, the phone call transcript and Petitioner's approved contact list—there is, at this point, no basis in the underlying record for the Court to conclude that this evidence was exculpatory.[4]

Thus, the Court finds that the instant record does not resolve the issue of whether Petitioner sought timely access to this potentially exculpatory evidence and, if he did, why the DHO denied Petitioner such access. In addition, because Respondent has not addressed Petitioner's specific allegations or submitted the underlying evidence into the record for judicial review, the Court also finds that it cannot discern whether this evidence is exculpatory such that it was central to Petitioner's ability to marshal the facts and mount a defense. See Wolff, 418 U.S. at 564, 566 (holding that a prisoner facing a disciplinary charge must be given the opportunity to, inter alia, "marshal the facts in his defense" and "present documentary evidence"). Finally, since Respondent has not discussed the contents of the DHO report, through either briefing or evidentiary support, the Court finds that the record also fails to resolve whether

---

[3] By way of example, Respondent has not addressed whether Haji is on Petitioner's "approved calling list" or whether Petitioner would have been permitted to have his outside contact "put [Haji] on the phone." (Doc. No. 2 at 4.)

[4] Instead, Respondent explains, by way of a footnote, that he "has not attached the transcript of the telephone call at issue as it contains information about telephone surveillance that could jeopardize prison security" and that he also has not attached "Petitioner's contact list that was provided by BOP counsel as it contains names and phone numbers of private individuals not a party to this litigation." (Doc. No. 8 at 8 n.1.) It is unclear to the Court, however, why Respondent did not at least seek leave to file these documents under seal.

the DHO actually reviewed the phone call transcript, or stated differently, whether the DHO actually considered this potentially exculpatory evidence.

Accordingly, for all of these reasons, the Court concludes that it cannot resolve the instant Section 2241 petition based upon the record before it. Heeding United States Supreme Court precedent, however, the Court will proceed with caution here and will direct the parties to supplement the record in accordance with the discussion above. See Young, 926 F.2d at 1400 (instructing as follows: "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators[, and we] must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required" (quoting Wolff, 418 U.S. at 566)).

### III.   CONCLUSION

To conclude, for all of the foregoing reasons, the Court will direct the parties to supplement the record in this matter. An appropriate Order follows.